IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| Chad Everette Williams, | ) | C/A No. 0:15-4156-MGL-PJG |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| vs. | ) | **REPORT AND RECOMMENDATION** |
| | ) | |
| Warden Larry Cartledge, | ) | |
| | ) | |
| Respondent. | ) | |
| _____ | ) | |

      Petitioner Chad Everette Williams, a self-represented state prisoner, filed this petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. This matter comes before the court pursuant to 28 U.S.C. § 636(b) and Local Civil Rule 73.02(B)(2) (D.S.C.) for a Report and Recommendation on the respondent's motion for summary judgment. (ECF No. 18.) Pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), Williams was advised of the summary judgment and dismissal procedures and the possible consequences if he failed to respond adequately to the respondent's motion. (ECF No. 19.) Williams filed a response in opposition to the respondent's motion. (ECF No. 30.) Williams also filed two motions to stay his Petition (ECF Nos. 27 & 29) and a conditional motion to amend his Petition (ECF No. 31), to which the respondent filed opposition (ECF Nos. 28, 33, & 34). Having carefully considered the parties' submissions and the record in this case, the court concludes that Williams's motions to stay should be denied, his motion to amend should be terminated as moot, and the respondent's motion for summary judgment should be granted and William's Petition denied.

*PJG*

## BACKGROUND

Williams was indicted in July 2007 in Aiken County for murder and burglary in the first degree.  (App. at 405-06, 410-11, ECF No. 17-1 at 409-10, 414-15.)  Williams was represented by David W. Miller, Esquire, and on October 20-22, 2008 was tried by a jury and found guilty as charged.[1]  (App. at 362, ECF No. 17-1 at 366.)  The circuit court sentenced Williams to life imprisonment for murder and twenty-five years' imprisonment for burglary, both sentences to be served concurrently.  (App. at 373, ECF No. 17-1 at 377.)

Williams timely appealed and was represented by Joseph L. Savitz, III, Esquire, Chief Appellate Defender of the South Carolina Commission on Indigent Defense, who filed an Anders[2] brief on Williams's behalf that raised the following issue:

> The trial judge committed reversible error by failing to instruct the jury on the law of accessory after the fact.

(ECF No. 17-4.)  Williams filed a *pro se* response in which he raised the following issues:

1.)    Accessory After the Fact[;]

2.)    Third Party Guilt[.]

---

[1] A hearing was held on October 16, 2008 at which time Williams initially indicated his intent to plead guilty to the charges in exchange for a negotiated sentence of thirty years' imprisonment for murder and a consecutive sentence of fifteen years' imprisonment for burglary (suspended upon service of ten years).  However, Williams opted not to plead guilty at that time and instead chose to proceed with a trial by jury.  (ECF No. 17-3.)

[2] Anders v. California, 386 U.S. 738 (1967).  Anders requires that counsel who seeks to withdraw after finding the "case to be wholly frivolous" following a "conscientious examination" must submit a brief referencing anything in the record that arguably could support an appeal; furnish a copy of that brief to the defendant; and after providing the defendant with an opportunity to respond, the reviewing court must conduct a full examination of the proceedings to determine if further review is merited.  Anders, 386 U.S. at 744.



(ECF No. 17-9.) On November 12, 2010, the South Carolina Court of Appeals dismissed Williams's appeal. (State v. Williams, Op. No. 2010-UP-505 (S.C. Ct. App. Nov. 12, 2010), ECF No. 17-10.) The remittitur was issued on December 23, 2010. (ECF No. 17-11.)

Williams filed a *pro se* application for post-conviction relief ("PCR") on April 1, 2011 in which he raised claims of ineffective assistance of counsel and prosecutorial misconduct/Brady violation. (See Williams v. State of South Carolina, 11-CP-02-729; App. at 375-82, ECF No. 17-1 at 379-86.) The State filed a return. (App. at 421-25, ECF No. 17-1 at 425-29.) Williams, through counsel Brett H. Lancer, Esquire, filed an amended application on January 9, 2014 in which he raised the following issues:

(a)    Ineffective assistance of Counsel – Counsel failed to object to the introduction of certain pieces of evidence that should have been objected to and therefore prejudiced the applicant.

(b)    Ineffective assistance of Counsel – Counsel failed to object to the jury charge instructing that malice may be inferred from the use of a deadly weapon.

(c)    Ineffective assistance of Counsel – Counsel failed to properly object to the introduction of the confession during the Jackson v. Denno hearing.

(d)    Ineffective assistance of Counsel – Counsel was ineffective for advising applicant to confess to the crimes of Murder and Burglary as the confession was used to convict applicant at trial.

(e)    Ineffective assistance of Counsel – Counsel failed to request the jury instruction of Accessory after the fact.

(f)    Ineffective assistance of Counsel – Counsel failed to adequately prepare for trial and develop a trial strategy.

(g)    Brady Violations.

(h)    Ineffective assistance of Counsel – Counsel failed to object to testimony of state's witnesses and failed to effectively cross examine the state's witnesses.



(App. at 414-20, ECF No. 17-1 at 418-24.)  On January 21, 2014, the PCR court held an evidentiary hearing at which Williams appeared and testified and continued to be represented by Brett H. Lancer, Esquire.  By order filed April 14, 2014 the PCR court denied and dismissed with prejudice Williams's PCR application.  (App. at 538-53, ECF No. 17-2 at 42-57.)

On appeal, Williams was represented by Robert M. Pachak, Esquire, Appellate Defender with the South Carolina Commission on Indigent Defense, who filed a <u>Johnson</u>[3] petition for a writ of certiorari that presented the following issue:

> Whether trial counsel was ineffective in failing to object to a jury charge that malice may be inferred from the use of a deadly weapon?

(ECF No. 17-12.)  Williams filed *pro se* responses to the <u>Johnson</u> petition in which he requested "a new P.C.R. hearing having the record corrected and all allegations properly preserved and ruled upon as to the Finding Facts and Conclusion of Law or have the P.C.R. court do a 59(e) motion for rulings and correction."  (ECF No. 17-14 at 3.)  On February 19, 2015, the South Carolina Supreme Court issued an order denying Williams's petition for a writ of certiorari.  (ECF No. 17-15.)  Williams filed a letter on March 2, 2015 that the South Carolina Supreme Court construed as a *pro se* petition for rehearing (ECF No. 17-16), and the court denied Williams's motion by Order issued April 8, 2015. (ECF No. 17-17.)  The remittitur was issued on April 8, 2015.  (ECF No. 17-18.)  This action followed.

---

[3] <u>Johnson v. State</u>, 364 S.E.2d 201 (S.C. 1988) (applying the factors in <u>Anders v. California</u>, 386 U.S. 738 (1967) to post-conviction appeals).



## FEDERAL HABEAS ISSUES

Williams's federal Petition for a writ of habeas corpus raises the following issues:

**Ground One:**  Ineffective Assistance of Trial Counsel in violation of the United States Const. 6th Amend.
**Supporting Facts:** Trial counsel failed to object to the introduction of certain pieces of evidence that should have been objected to and therefore prejudiced the applicant. Trial counsel was ineffective of advising applicant to confess to the crimes of Murder and Burglary as the confession was used to convict applicant at trial.  Trial counsel failed to adequately prepare for trial and develop a trial strategy.  Trial counsel failed to object to testimony of State witnesses and failed to effectively cross examine the State witnesses.

**Ground Two:**  Prosecutorial Misconduct in violation of the United States Const. 14th Amend.
**Supporting Facts:**  Prosecutor used and failed to correct perjured testimony (Inv. Clay Adams, SLED Forensics Lilly Gallman, and Crystal Jackson).  Prosecutor knowingly and willfully presented and argued false evidence (socks), and testimony in trial[.]

**Ground Three:**  Ineffective of Assistance of P.C.R. counsel.  See Martinez v. Ryan [132 S. Ct. 1309 (2012)].
**Supporting Facts:**  P.C.R. counsel was ineffective for failing to raise trial counsel's ineffectiveness for failing to bring up 3rd Party Guilt.  P.C.R. counsel was ineffective by not requesting funds for an expert to test the socks.  P.C.R. counsel was ineffective for not raising prosecutorial misconduct when it was clear and convincing.

(Pet., ECF No. 1.)

## DISCUSSION

### A.    Summary Judgment Standard

Summary judgment is appropriate only if the moving party "shows that there is no genuine dispute as to any material fact and the [moving party] is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  A party may support or refute that a material fact is not disputed by "citing to particular parts of materials in the record" or by "showing that the materials cited do not establish



the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). Rule 56 mandates entry of summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

In deciding whether there is a genuine issue of material fact, the evidence of the non-moving party is to be believed and all justifiable inferences must be drawn in favor of the non-moving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). However, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." Id. at 248.

The moving party has the burden of proving that summary judgment is appropriate. Once the moving party makes this showing, however, the opposing party may not rest upon mere allegations or denials, but rather must, by affidavits or other means permitted by the Rule, set forth specific facts showing that there is a genuine issue for trial. See Fed. R. Civ. P. 56(c), (e); Celotex Corp., 477 U.S. at 322. Further, while the federal court is charged with liberally construing a petition filed by a *pro se* litigant to allow the development of a potentially meritorious case, see, e.g., Cruz v. Beto, 405 U.S. 319 (1972), the requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts which set forth a federal claim, nor can the court assume the existence of a genuine issue of material fact where none exists. Weller v. Dep't of Soc. Servs., 901 F.2d 387 (4th Cir. 1990).

B.    **Habeas Corpus Standard of Review**

In accordance with the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), claims adjudicated on the merits in a state court proceeding cannot be a basis for federal habeas corpus relief unless the decision was "contrary to, or involved an unreasonable application of clearly established federal law as decided by the Supreme Court of the United States," or the decision "was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding."  28 U.S.C. § 2254(d)(1), (2).  When reviewing a state court's application of federal law, "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.  Rather, that application must also be unreasonable."  Williams v. Taylor, 529 U.S. 362, 410 (2000); see also White v. Woodall, 134 S. Ct. 1697, 1702 (2014) (describing an "unreasonable application" as "objectively unreasonable, not merely wrong" and that "even clear error will not suffice") (internal quotation marks and citation omitted); Harrington v. Richter, 562 U.S. 86, 100 (2011); Humphries v. Ozmint, 397 F.3d 206 (4th Cir. 2005); McHone v. Polk, 392 F.3d 691 (4th Cir. 2004).  Moreover, state court factual determinations are presumed to be correct and the petitioner has the burden of rebutting this presumption by clear and convincing evidence.  28 U.S.C. § 2254(e)(1).

"A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision."  Harrington, 562 U.S. at 101 (quoting Yarborough v. Alvarado, 541 U.S. 652, 664 (2004)); see also White, 134 S. Ct. at 1702 (stating that " '[a]s a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so



lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement' ") (alteration in original) (quoting Harrington, 562 U.S. at 103). Under the AEDPA, a state court's decision "must be granted a deference and latitude that are not in operation" when the case is being considered on direct review. Harrington, 562 U.S. at 101. Moreover, review of a state court decision under the AEDPA standard does not require an opinion from the state court explaining its reasoning. See id. at 98 (finding that "[t]here is no text in [§ 2254] requiring a statement of reasons" by the state court). If no explanation accompanies the state court's decision, a federal habeas petitioner must show that there was no reasonable basis for the state court to deny relief. Id. Pursuant to § 2254(d), a federal habeas court must (1) determine what arguments or theories supported or could have supported the state court's decision; and then (2) ask whether it is possible that fairminded jurists could disagree that those arguments or theories are inconsistent with the holding of a prior decision of the United States Supreme Court. Id. at 102. "If this standard is difficult to meet, that is because it was meant to be." Id. Section 2254(d) codifies the view that habeas corpus is a " 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." Id. at 102-03 (quoting Jackson v. Virginia, 443 U.S. 307, 332 n.5 (1979) (Stevens, J., concurring in judgment)).

## C.    Exhaustion Requirements

A habeas corpus petitioner may obtain relief in federal court only after he has exhausted his state court remedies. 28 U.S.C. § 2254(b)(1)(A). "To satisfy the exhaustion requirement, a habeas petitioner must present his claims to the state's highest court." Matthews v. Evatt, 105 F.3d 907, 911 (4th Cir. 1997), abrogated on other grounds by United States v. Barnette, 644 F.3d 192 (4th Cir.



2011); see also In re Exhaustion of State Remedies in Criminal and Post-Conviction Relief Cases, 471 S.E.2d 454, 454 (S.C. 1990) (holding that "when the claim has been presented to the Court of Appeals or the Supreme Court, and relief has been denied, the litigant shall be deemed to have exhausted all available state remedies."). To exhaust his available state court remedies, a petitioner must "fairly present[] to the state court both the operative facts and the controlling legal principles associated with each claim." Longworth v. Ozmint, 377 F.3d 437, 448 (4th Cir. 2004) (internal quotation marks and citation omitted). Thus, a federal court may consider only those issues which have been properly presented to the state appellate courts with jurisdiction to decide them. Generally, a federal habeas court should not review the merits of claims that would be found to be procedurally defaulted (or barred) under independent and adequate state procedural rules. Lawrence v. Branker, 517 F.3d 700, 714 (4th Cir. 2008); Longworth, 377 F.3d 437; see also Coleman v. Thompson, 501 U.S. 722 (1991). For a procedurally defaulted claim to be properly considered by a federal habeas court, the petitioner must "demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." Coleman, 501 U.S. at 750.

**D.      Summary Judgment Motion**

**1.      Ineffective Assistance of Trial Counsel (Ground One)**

As indicated above, Williams alleges in Ground One that trial counsel was ineffective in failing to object to the introduction of certain pieces of evidence and to the testimony of State witnesses; failing to effectively cross-examine the State witnesses; advising Williams to confess to the crimes of Murder and Burglary; and failing to adequately prepare for trial and develop a trial strategy.



A defendant has a constitutional right to the effective assistance of counsel. To demonstrate ineffective assistance of counsel, a petitioner must show, pursuant to the two-prong test enunciated in Strickland v. Washington, 466 U.S. 668 (1984), that (1) his counsel was deficient in his representation and (2) he was prejudiced as a result. Id. at 687; see also Williams v. Taylor, 529 U.S. 362, 391 (2000) (stating that "the Strickland test provides sufficient guidance for resolving virtually all ineffective-assistance-of-counsel claims"). To satisfy the first prong of Strickland, a petitioner must show that trial counsel's errors were so serious that his performance was below the objective standard of reasonableness guaranteed by the Sixth Amendment to the United States Constitution. With regard to the second prong of Strickland, a petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694.

The United States Supreme Court has cautioned federal habeas courts to "guard against the danger of equating unreasonableness under Strickland with unreasonableness under § 2254(d)." Harrington, 562 U.S. at 105. The Court observed that while "'[s]urmounting Strickland's high bar is never an easy task[,]' . . . [e]stablishing that a state court's application of Strickland was unreasonable under § 2254(d) is all the more difficult." Id. (quoting Padilla v. Kentucky, 559 U.S. 356, 371 (2010)). The Court instructed that the standards created under Strickland and § 2254(d) are both " 'highly deferential,' and when the two apply in tandem, review is 'doubly' so." Id. (citations omitted). Thus, when a federal habeas court reviews a state court's determination regarding an ineffective assistance of counsel claim, "[t]he question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied Strickland's deferential standard." Id.



The Supreme Court has held that a decision containing a reasoned explanation is not required from the state court. As stated above, if no explanation accompanies the state court's decision, a federal habeas petitioner must show that there was no reasonable basis for the state court to deny relief. In the case at bar, this court has the benefit of the PCR court's written opinion, certiorari review of which was denied by the South Carolina Supreme Court, which may provide reasons or theories that the appellate court could have relied upon in summarily denying Williams's petition. Therefore, the court will first consider whether the PCR court's order unreasonably misapplied federal law or was based on an unreasonable determination of the facts. Having reviewed the PCR court's order pursuant to the § 2254 standard, the court finds for the reasons that follow that the state court did not unreasonably misapply the <u>Strickland</u> test in determining that no Sixth Amendment violation occurred.

In finding that Williams failed to meet his burden of demonstrating that his trial counsel was ineffective, the PCR court first summarized the testimony presented by Williams and his trial counsel at the PCR hearing. Pertinent to the claims presented in the instant Petition, the PCR court stated that Williams testified trial counsel should have objected to a pair of white socks containing his DNA that were introduced at trial. The PCR court further stated that Williams alleged "he was unaware of the socks prior to trial" which was a <u>Brady</u>[4] violation. The PCR court also found that Williams stated that trial counsel

> advised him that he would ultimately be found guilty and the best possible scenario
> was to confess to the crime in hopes of getting an offer. [Williams] stated when he
> confessed there was no offer on the table and that Counsel hoped the State would
> offer something once [Williams] confessed to the crime. [Williams] stated he agreed

---

[4] <u>Brady v. Maryland</u>, 373 U.S. 83 (1963) (establishing that due process requires a prosecutor to disclose material exculpatory evidence to the defendant before trial).



> to give confession. [Williams] stated he confessed in hopes of getting an offer to avoid the possibility of life without parole. [Williams] stated four days later they went to trial and the State's case was stronger due to the confession.

(App. at 541, ECF No. 17-2 at 45.) The PCR court also found that Williams stated trial counsel's "sole skill and strategy centered around getting [Williams] to plead guilty." (App. at 542, ECF No. 17-2 at 46.) The PCR court stated that Williams testified trial counsel failed to put up an adequate defense, should have presented a better defense, and was not prepared. The PCR court stated that Williams indicated he was not comfortable going to trial; however, he also testified that he and trial counsel wanted the last argument so they did not put up any evidence. Finally, the PCR court found that Williams alleged trial counsel "failed to object to Lilly Gallman['s] testimony regarding the introduction of certain pieces of DNA evidence," stating that there was a hair found on a sock. (Id.) The PCR court stated that Williams asserted trial counsel should have objected to the DNA evidence from the sock "because it was a Brady violation." (Id.)

The PCR court also summarized trial counsel's testimony that he had met with Williams on numerous occasions. Relevant here, the PCR court specifically found as follows:

> Counsel stated during their first meeting he had not obtained discovery material. Counsel stated he filed Rule 5 and Brady motions and reviewed the material with [Williams] in subsequent meetings. Counsel stated they did not physically see the white socks, but reviewed the DNA report regarding the socks. Counsel stated the DNA evidence came in on September 17, 2008. Counsel stated on September 24, 2008, he went to the jail and reviewed both the DNA results and the video recording of Police digging up the burnt evidence with [Williams]. Counsel stated he also reviewed the taped interviews with [Williams]. Counsel stated he had to get special permission to go into a big intake room to be able to play the videos and discuss the evidence with [Williams].
>
> Counsel testified the evidence against [Williams] was overwhelming. Specifically, Counsel stated the Victim was found dead in his home. Counsel stated law enforcement arrived and found that there was no sign of forced entry. Counsel stated Victim was hit in the head with two blunt objects. Counsel stated the police were able to link the occupants of a nearby house and eventually connected [Williams].



Counsel stated the major problem with [Williams] was attempting to convince him that Crystal Jackson (Jackson) would be testifying against him at trial. Counsel stated [Williams] did not believe Jackson would testify against him. Counsel stated [Williams] alleged Jackson was lying and came up with various reasons as to why she would be lying. Counsel stated [Williams's] reasoning was not beneficial.

Counsel stated [Williams] gave multiple versions of what occurred the night of the incident. Counsel stated [Williams's] version of events would change when Counsel confronted him with the various "holes" his version. Counsel stated ultimately [Williams] gave a fourth version that in Counsel's opinion was very strong. Counsel stated, [Williams] explained, that Jessie James Quarles (Quarles) committed the murder. Counsel stated [Williams] admitted that both he and Jackson were scared of Quarles and as a result Jackson was lying. Counsel stated he could not find anything to contradict [Williams's] version of events and felt that [Williams] was finally telling the truth. Counsel stated he asked Investigator Sharpe to hear [Williams's] story and [Williams] again told a very detailed and similar story to Investigator Sharpe. Counsel stated he and Investigator Sharpe ultimately concluded [Williams] was telling the truth. Counsel felt the story amounted to a complete defense.

Additionally, Counsel stated he discussed with [Williams] about the possibility of taking a polygraph. Counsel stated [Williams] agreed and he contacted the Solicitor['s] office to arrange for a [p]olygraph test. Counsel stated on July 2, 2008 [Williams] again told his story to Counsel, Investigator Sharpe, Bill Weeks (Solicitor), Bill Fleury, and Platt (polygraph administrator). Counsel stated [Williams] and Platt went into a room to take the polygraph. Counsel stated while in the room Bill Fleury (Solicitor) stated he did not believe the story because Jessie Quarles was in prison in Edgefield County during this incident. Counsel stated [Williams] ultimately failed the polygraph and admitted that he was lying. Counsel stated [Williams] was concerned and did not know what to do next. Counsel stated he advised [Williams] that if he did not cooperate with the State then they have no reason help him. Counsel stated as a result, [Williams] sat down and told the truth. Counsel stated it was very detailed and quick. Counsel stated [Williams] explained that Jackson was with him the entire time and they were looking for money and drugs. Counsel stated [Williams] recalled going to the back bed room and a dog barked arousing the Victim. Counsel stated [Williams] said the Victim reached underneath his pillow and [Williams] kept hitting him as a result. Counsel stated [Williams] said Jackson came in and saw what happened and fled. Counsel stated [Williams] said they bagged the clothing, dug a hole, and burned it. Counsel stated [Williams's] confession was significant because it contradicted Jackson's statement to the police. Counsel stated it was always his belief that Jackson played an integral role in the murder of the Victim.
. . . .

Counsel stated the State set the case for trial four days later. Counsel stated he was prepared for trial and had been preparing the case for six months. Counsel



> stated if he was not prepared he would have requested a continuance. Counsel stated he felt he adequately cross-examined the State's witnesses. Counsel stated his trial strategy was to attack the credibility of the State's witnesses and point out the inconsistencies of their stories. Counsel stated he did not want to cross-examine Lilly Gallman concerning the DNA evidence, because he did not want to point out to the jury, yet again, that Victim's DNA was found on Applicant's clothing.
> . . . .

(App. at 542-46, ECF No. 17-2 at 46-65.)

As an initial matter, in denying and dismissing Williams's application, the PCR court found trial counsel's testimony to be very credible, and Williams's testimony to be not credible. (App. at 546, ECF No. 17-2 at 46.)  Williams has failed to challenge this finding and therefore has not provided any information to clearly show that the credibility determination in the PCR court's order is without support.  See Elmore v. Ozmint, 661 F.3d 783, 850 (4th Cir. 2011) ("We must be 'especially' deferential to the state PCR court's findings on witness credibility, and we will not overturn the court's credibility judgments unless its error is 'stark and clear.' ") (quoting Sharpe v. Bell, 593 F.3d 372, 378 (4th Cir. 2010) and Cagle v. Branker, 520 F.3d 320, 324 (4th Cir. 2008)).

Further, the PCR court considered and rejected each of Williams's allegations of counsel error.  With regard to Williams's allegations that trial counsel was ineffective in failing to object to the introduction of certain pieces of evidence, in failing to object to the testimony of State witnesses, and in failing to effectively cross-examine the State witnesses, it appears that these allegations are directed towards the introduction of the socks and the testimony surrounding the DNA recovered from the socks.  At the PCR hearing, Williams argued that it was incorrect to present the socks as evidence recovered from the burn pile.  However, trial counsel stated that the socks about which Lilly Gallman testified were socks that were retrieved from Williams's laundry hamper that

contained both the victim's and Williams's DNA.  Trial counsel described Gallman's testimony at

confusing and convoluted and stated

> I was very hopeful that the jury was going to stay confused and convoluted by her
> testimony,
>         I did not want to give her the opportunity to clarify herself and say, oh no,
> these weren't the socks from this location.  They were actually the socks from the
> hamper in the bathroom, but they did have [the victim's] DNA and Chad Williams'
> DNA on them, because we couldn't explain why they would have [the victim's]
> DNA and Chad Williams' DNA on them.
> . . . .  So, no, I did not get into a huge debate with her over where those socks came
> from and why they should not have been admitted, a picture of socks in a bag that
> had been burned shouldn't be admitted.

(App. at 516-17, ECF No. 17-2 at 20-21.)  Thus, based on all of the foregoing, the PCR court

reasonably found that trial counsel's decision not to object to the introduction of the socks was

reasonable.  Further, the PCR observed that it was unclear whether there were any legitimate issues

with the introduction of specific evidence and reiterated trial counsel's testimony that he did not

cross-examine the testimony from the DNA expert because he did not want to draw more attention

to it.  The PCR court further reasonably found that even if there was anything improper in admitting

the socks, Williams failed to meet his burden to show prejudice or that the result of the proceeding

would have been different.  (App. at 547-48, ECF No. 17-2 at 51-52.)

    With regard to Williams's allegation that trial counsel was ineffective in advising Williams

to confess to the crimes of Murder and Burglary, the PCR court reasonably found in light of the

testimony and record presented that trial counsel's "actions were reasonable given the overwhelming

evidence against [Williams] and his hopes for a plea deal."  (App. at 550, ECF No. 17-2 at 54.)

Finally, with regard to Williams's allegation trial counsel was ineffective in failing to adequately

prepare for trial and develop a trial strategy, the PCR court reasonably found that



> Counsel testified it was his trial strategy to cross-examine the State's witnesses and attack their credibility. Counsel further clarified that [Williams] had no legitimate alibi or defense claim. Our courts are understandably wary of second-guessing defense counsel's trial tactics. Where counsel articulates valid reasons for employing a certain strategy, counsel's choice of tactics will not be deemed ineffective assistance. This Court finds Counsel articulated valid strategic reasons. The Applicant has not shown that counsel was deficient in that choice of tactic.

(App. at 550-51, ECF No. 17-2 at 54-55.) Thus, the PCR court reasonably found that Williams failed to meet his burden of proof as to his allegations of ineffective assistance of trial counsel as he failed to satisfy either prong of the Strickland test. (App. at 551, ECF No. 17-2 at 55.)

Upon thorough review of the parties' briefs and the record in this matter, the court finds the PCR court's analysis to be reasonable and concludes that Williams cannot demonstrate that the PCR court unreasonably misapplied clearly established federal law as decided by the Supreme Court in rejecting his claims of ineffective assistance of trial counsel or that the PCR court made objectively unreasonable factual findings. See Williams, 529 U.S. at 410; 28 U.S.C. § 2254(d), (e)(1). Thus, Williams cannot show "there was no reasonable basis" for the state appellate court to deny relief. Harrington, 562 U.S. at 98. As observed by the Harrington Court, "[t]he pivotal question is whether the state court's application of the Strickland standard was unreasonable. This is different from asking whether defense counsel's performance fell below Strickland's standard." Harrington, 562 U.S. at 101. Moreover, although Williams has submitted numerous filings, none appears to provide any support for these allegations of error.

Further, upon careful review of the record and the PCR court's order, for all of the reasons discussed by the PCR court, the court concludes that Williams has failed to establish trial counsel's actions were error, much less that they were objectively unreasonable such that it rendered his performance deficient. Williams has failed to demonstrate that any of the PCR court's findings were



unreasonable nor has he shown that the PCR court's analysis of these issues misapplied clearly established federal law or, even if there was an error, that it was unreasonable. See Williams, 529 U.S. at 410; see also Harrington, 562 U.S. at 101. Accordingly, the respondent's motion for summary judgment should be granted as to Ground One.

### 2.    Prosecutorial Misconduct (Ground Two)

In Ground Two, Williams raises freestanding allegations of prosecutorial misconduct, arguing that the prosecutor improperly used perjured testimony from an investigator, a forensics expert, and a witness. Williams also alleges that the evidence with regard to the socks was false. The respondent argues that this ground is procedurally defaulted and barred from federal habeas review. Specifically, the respondent argues that this claim was not ruled on by the PCR court and thus was not preserved for review by the state appellate courts.

Williams does not dispute that this claim is procedurally defaulted; instead he argues that his Petition should be stayed pursuant to Rhines v. Weber, 544 U.S. 269 (2005), to enable him to pursue this claim in state court. Williams has also separately filed two motions to stay this matter (ECF Nos. 27 & 29), to which the respondent has filed opposition (ECF Nos. 28 & 33). Pursuant to Rhines, a federal habeas case may be stayed and held in abeyance "where such a stay would be a proper exercise of discretion." Id. at 276. The Supreme Court further stated that in certain instances where a petitioner had filed a "mixed" petition—a petition containing exhausted and unexhausted claims—an exercise of such discretion would be proper. Id. at 272-73, 276.

Prior to Rhines and the enactment of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), total exhaustion of state remedies was required prior to the filing of a federal habeas petition, which required all mixed petitions to be dismissed without prejudice. Rose v.



Lundy, 455 U.S. 509 (1982); Rhines, 544 U.S. at 273-74.  After the enactment of AEDPA, which included a one-year statute of limitations for the filing of federal habeas petitions under § 2254, the Supreme Court modified the rule regarding mixed petitions in certain limited circumstances.  The modification was due to the fact that situations could arise where a mixed petition is timely filed in federal court, but the result of dismissing the federal habeas petition may result in time-barring the petitioner from returning to federal court after completing his obligation to exhaust all issues.  Rhines, 544 U.S. at 275.  Therefore, the Rhines Court held that a district court may in limited circumstances stay a habeas proceeding; however, it is "only appropriate when the district court determines there was good cause for the petitioner's failure to exhaust his claims first in state court."  Id. at 277.  Additionally, "even if a petitioner had good cause for that failure, the district court would abuse its discretion if it were to grant him a stay when his unexhausted claims are plainly meritless."  Id.  Accordingly, a stay should be granted where a petitioner demonstrates "good cause for his failure to exhaust, his unexhausted claims are potentially meritorious, and there is no indication that the petitioner engaged in intentionally dilatory litigation tactics."  Id. at 278.

        As an initial matter, Williams has failed to demonstrate an available avenue to exhaust this claim in state court.  As detailed above, Williams has already pursued a PCR action through the appeals process.  Williams has not directed the court to any avenue available for him to now return to state court to properly present this claim to the state court in the first instance.  (See Respt.'s Resp. Opp'n Mot. to Stay at 3, ECF No. 28 at 3) (discussing the state court's limitations on successive applications); see, e.g., Portee v. Stevenson, C.A. No.: 8:15-cv-487-PMD-JDA, 2016 WL 690871, at *10 (D.S.C. Feb. 22, 2016) (finding a stay under Rhines inapplicable where "[a]ll of Petitioner's grounds are technically exhausted because South Carolina's statute of limitations for PCR actions



and its bar on successive PCR applications prevent Petitioner from litigating any of his defaulted § 2254 claims in state court"). Moreover, as pointed out by the respondent, to date, Williams has not attempted to pursue a successive PCR action. Therefore, under the current circumstance of this case, as Williams has failed to demonstrate an available avenue to exhaust this claim in state court, Williams's motions to stay must be denied.[5] (ECF Nos. 27 & 29.)

However, that does not end the analysis for this claim. The court observes that Williams cites in his Petition Martinez v. Ryan, 132 S. Ct. 1309 (2012), which provides an avenue to show cause and excuse the procedural default of a claim. Generally, any errors of PCR counsel cannot serve as a basis for cause to excuse a petitioner's procedural default of his claims. See Coleman, 501 U.S. at 752. However, in Martinez the United States Supreme Court established a "limited qualification" to the rule in Coleman. Martinez, 132 S. Ct. at 1319. The Martinez Court held that inadequate assistance of counsel "at initial-review collateral review proceedings may establish cause for a prisoner's procedural default of *a claim of ineffective assistance at trial*." Id. at 1315 (emphasis added). Thus, any attempt by Williams to apply Martinez to a claim of prosecutorial misconduct is misplaced because Martinez does not aid a petitioner in excusing his procedural default of a claim

---

[5] In conjunction with one of his motions to stay, Williams submitted a proposed amended petition which removes his second ground from his petition. The court construed this filing as a motion to amend his Petition. (ECF No. 31.) However, in Williams's response in opposition to summary judgment, he states that he "is filing a proposed First Amended Petition that temporarily deletes the un-exhausted claim" and asks the court "to file the amended petition, conditional upon the court granting the Petitioner's Motion to Stay it, while Petitioner returns to state court to exhaust." (ECF No. 30 at 1.) Williams states that after he completes the exhaustion of his claims, he will submit a Second Amended Petition that contains all of the claims. In light of the court's determination that his motions to stay must be denied, and based on the foregoing, the court finds that Williams's motion to amend is moot.



unrelated to ineffective assistance of trial counsel.  Therefore, Ground Two is procedurally barred from federal habeas review.

### 3.     Ineffective Assistance of PCR Counsel (Ground Three)

Finally, Williams's Petition presents a freestanding claim of ineffective assistance of PCR counsel.  The respondent argues and the court agrees that such a freestanding claim is not cognizable in federal habeas proceedings.  See 28 U.S.C. § 2254(i) ("The ineffectiveness or incompetence of counsel during Federal or State collateral post-conviction proceedings shall not be a ground for relief in a proceeding arising under section 2254."); see also Martinez, 132 S. Ct. 1309, 1320 (2012) (stating that "while § 2254(i) precludes Martinez from relying on the ineffectiveness of his postconviction attorney as a 'ground for relief,' it does not stop Martinez from using it to establish 'cause' " for an otherwise procedurally defaulted ineffective assistance of trial counsel claim).  Therefore, Williams is not entitled to federal habeas relief on Ground Three.

### RECOMMENDATION

For the foregoing reasons, the court recommends that Williams's motions to stay (ECF Nos. 27 & 29) be denied and his motion to amend (ECF No. 31) be terminated as moot.  Further, the court recommends that the respondent's motion for summary judgment (ECF No. 18) be granted and Williams's Petition denied.

_____
Paige J. Gossett
UNITED STATES MAGISTRATE JUDGE

May 18, 2016
Columbia, South Carolina

*The parties' attention is directed to the important notice on the next page.*

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge.  Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.  "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'"   Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); see Fed. R. Civ. P. 6(a), (d).  Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Robin L. Blume, Clerk
United States District Court
901 Richland Street
Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.**  28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).